UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

D-5 JOHN DIJUAN DAVIS,

       Defendant.

_____/

Criminal No. 19-cr-20492 - 5

HON. MARK A. GOLDSMITH

## GOVERNMENT'S SENTENCING MEMORANDUM

### I. Introduction

Defendant John Davis was caught in the act of robbing a Jared's jewelry store and arrested in Jacksonville, Florida. In the days before the attempted robbery, Davis, along with three others, traveled from the metropolitan Detroit area to Florida for the sole purpose of robbing the jewelry store. Davis knowingly joined a sophisticated and nationwide conspiracy, which is responsible for dozens of robberies throughout the United States.

In face of these facts, Davis pleaded guilty to Count One of the Second Superseding Indictment, Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). The parties agreed in the Rule 11 Agreement that Davis's guideline range was 51-63 months.

Based upon the guidelines, Davis's background and offense conduct, the

1

government recommends a term of imprisonment at the top of the properly calculated guidelines.

## II. Statement of Facts

Since approximately August 2018, the FBI has been investigating a string of "smash and grab" robberies at jewelry stores. During these robberies, the robbers use hand-held sledge hammers and hammers to break the jewelry stores' glass display cases and/or intimidate the stores' employees to unlock the display cases. The robbers then take loose diamonds, rings, jewelry, and other items of value. Over 30 such instances—all fitting similar description and *modus operandi*—have occurred in the Eastern and Western Districts of Michigan, as well as in Illinois, Indiana, Ohio, Pennsylvania, and as far away as Alabama, Florida, Louisiana, New Hampshire, and South Carolina. The investigation has revealed that many of the robberies were connected, planned, coordinated, and conducted by individuals living in Detroit, Michigan.

The FBI learned that for each of these robberies, typically two groups would drive to the robbery location from Detroit in two separate vehicles, one in a "clean" vehicle that was either properly registered or lawfully rented, and one in a "burner" or stolen vehicle that could be ditched immediately after the robberies. During these robberies, one or two individuals would act as lookouts, while others would enter the store. Once inside, the robbers used sledge hammers to break glass

2

enclosures and then take diamonds and other jewelry. After ditching the stolen car the group would travel back to Detroit in the clean vehicle.

This pattern was, once again, followed for the robbery attempt in Jacksonville, Florida. The robbers struck Jared's Galleria of Jewelry at approximately 6:50 PM. Although the store was open for business, the front doors to the store were locked. Devon Newby as the lookout, was in phone contact with the co-conspirators and watched as one of the three robbers, the co-defendant Tristan Murphy, was let into the store after he knocked and asked if he could use the restroom. Approximately two minutes later, Davis and Delano Ross, wearing hoods, began pulling on interior locked doors. They pulled hard enough that the doors opened. Davis can be seen entering the jewelry store below:



**CCTV still for Jacksonville robbery depicting Davis entering the store after the doors were forced open.**

A few seconds later, Davis can be seen on the surveillance video below, wielding a hammer as he enters the store:



**CCTV still from the Jacksonville robbery depicting Davis holding a hammer inside the jewelry store.**

Once all three co-conspirators were inside, one of the of them chased after an employee who was trying to get away and hide behind a display counter. He grabbed the employee, knocking her over onto the floor, dragging her by her shirt across the floor, before pulling her to her feet–forcing her to another area of the store. Davis began unlocking the display cases with the keys he got from the employees, after threatening to smash the glass with the hammer. But before the

4

co-defendants could take any of the jewelry, Jacksonville County Florida Sheriff's Officers arrived on scene.

After Davis was arrested, he was taken to the Jacksonville Sheriff's Department. There he can be seen on video surveillance still wearing the distinctive gray-hooded sweatshirt, with a wide, white stripe across the shoulders, that he wore during the attempted robbery:



**CCTV still from the Jacksonville Sheriff's Department depicting Davis**.

### III. Procedural History

On July 9, 2019, Magistrate Judge Elizabeth Stafford authorized a criminal complaint charging 10 individuals, including Davis, with conspiracy to commit Hobbs Act robbery. On September 25, 2019, the federal Grand Jury seated in the Eastern District of Michigan, indicted Davis. Davis was charged in a Second Superseding Indictment with conspiracy to commit Hobbs Act Robbery. (ECF No. 76).

On November 19, 2020, Davis appeared before the Court and pleaded guilty as charged to the Second Superseding Indictment, with the benefit of a Rule 11 plea agreement.

### IV. Sentencing Guideline Calculations and Other 3553(A) Factors

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of

6

similar conduct; and (7) the need for restitution. The most relevant factors are evaluated below.

### A. The advisory guideline range

In *United States v. Rita*, 551 U.S. 338 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a). In *United States v. Gall*, 128 S. Ct. 586, 601 (2007), the Supreme Court held that a district court should begin sentencing proceedings by correctly calculating the guidelines. *Id.* at 596.

There are no guideline disputes in this case. The parties agree that the correct range is 51-63 months. Probation calculated the same range, (PSR ¶ 79), albeit with a different scoring for criminal history.

### B. Nature and circumstances of the offense, and the history and characteristics of the offender, 18 U.S.C. § 3553(a)(1)

#### 1. Nature of the offense

Pursuant to Title 18 United States Code Section 1951(a) - "Hobbs Act Robbery" - it is a violation of federal law to interfere with commerce by robbery or threatened force, violence, or fear of physical injury. The Hobbs Act also punishes conspiracy and attempts to affect interstate or foreign commerce by robbery. Proof of the robbery requires a showing that the defendant unlawfully took or obtained tangible personal property from the victim's person or in his presence without the

7

victim's consent and that the defendant used actual or threatened force, violence, or fear of physical injury to the person or property of the victim or others accompanying the victim. 18 U.S.C. § 1951(b)(1). Conspiracy to Commit Hobbs Act Robbery requires that the perpetrators agree that actual or threatened violence or force will be used to steal property from someone else. By its very nature, a robbery is designed to strike fear in its victims, and then, to take advantage of that fear by stealing from them.

Here, Davis and his co-conspirators accomplished just that. One employee was assaulted and dragged during the crime, as the two other defendants broke open the locked front-doors and ran into the store. Another employee was pushed against one of the display cases. (see victim impact letter, submitted to the Probation Department). Davis armed himself with a weapon – a hammer, (PSR ¶¶ 22, 29). He brandished it (see still photo above), to force employees to open the glass display cases, or to smash them. The effects of Davis's conduct that day are, unfortunately, still being felt today. The victims report how they have not yet recovered from being assaulted. They still feel terrified, and one of the victims reports that the impact this crime has had on his/her life "continues to haunt me to this very day". (see victim impact statements).

2. **History and characteristics**

Davis's criminal history is set out in the PSR at ¶¶ 38-48. The present case constitutes his fourth felony conviction. His first felony conviction was for Home

8

Invasion Second Degree in Oakland County Circuit Court in 2007. He was sentenced to 1-15 years in prison. His adjustment in prison was poor. While incarcerated, Davis had 19 violations for misconduct. (PSR ¶ 39).

Once granted parole, his behavior did not improve. Davis violated parole conditions by testing positive for controlled substances, and for failing to report for mandated drug screening. (*Id.*). After a few months on parole, he absconded. *(Id.)* Davis was arrested for his parole violation, and after being held for a few days, he was re-released back on parole in August 2008–only to abscond again two months later. (*Id.*). Two weeks later, he was arrested with a firearm. He was charged with being a Felon in Possession of a firearm and Felony Firearm. He pleaded guilty to Felony Firearm in Wayne County Circuit Court and was sent back to prison for two years in February 2009. (PSR ¶ 40).

Davis was once again granted parole in June 2013, and once again he absconded in January 2014. (*Id.*) About a month later, he was arrested with a firearm and charged with being a Felon in Possession of a Firearm and Felony Firearm, Second Offense, in Wayne County Circuit Court. Davis was given a break. He pleaded guilty to the Felon in Possession charge, and the Felony Firearm, Second Offense count was dismissed. He avoided a mandatory 60-month, consecutive sentence for that offense, and was sentenced to 42-84 months. (PSR ¶ 41). Davis repaid this genericity by, yet again, absconding from parole after being released from prison. (*Id.*).

9

In addition to his felony convictions, Davis has been charged, bound over for trial, and is awaiting trial for Open Murder, Felon in Possession of a Firearm, and Felony Firearm in Wayne County. (PSR ¶ 46).

The PSR also describes Davis's substance abuse. (PSR ¶¶ 63-68). This includes his daily use of marihuana, as well as his use of Percocet, Xanax, and Ecstasy.

### C. Seriousness of the offense, promoting respect for law, and providing just punishment, 18 USC § 3553(a)(2)(A)

The advisory guidelines create a range so the courts can sentence similar defendants appropriately based upon the severity of their conduct. Davis's background and conduct places him at the top of this theoretical range. Past sentences, which have included incarceration in both local jails and state prison facilities, and parole have not promoted his respect for the law. He has repeatedly demonstrated his lack of regard for supervising authority by absconding while on parole. In fact, Davis is an habitual absconder. Even worse, he has continued to commit crimes while under parole supervision. Davis was twice convicted for firearm offenses he committed while on parole. Just barely five months after his parole was terminated, the murder for the case that is currently pending in Wayne County Circuit Court was committed. (PSR ¶ 46). Based on his demonstrated lack of respect for the law, incarceration at the top of the guideline range would be a just sentence.

**D.     Adequate deterrence and protecting the public from further crimes of the defendant, §3553(a)(2)(B) and (C)**

Deterrence may serve to discourage others who are inclined to involve themselves in similar criminal conduct. Deterrence is also an important consideration when fashioning a sentence that will persuade a defendant away from continuing to engage in criminal behavior.

Simply put, no set of circumstances thus far has deterred Davis from violating the law and causing harm to others. Three separate incarcerations in state prison did not stop him. Parole did not stop him. Despite these custodial and supervisory measures imposed on him to deter his criminal conduct, Davis still agreed to join a sophisticated conspiracy to rob jewelry stores and he traveled from Michigan to Florida to accomplish this crime. Likewise, these measures had no effect on his decision to storm into that Jared's wielding a hammer to strike fear in the hearts of the employees and to steal. A sentence at the top of the sentencing guidelines is necessary to protect the public for as long as possible from Davis's criminal conduct.

[Intentionally left blank]

## V.     Conclusion

For the reasons outlined above, the government respectfully recommends that the Court impose a sentence at the top of the guidelines.

                                        Respectfully submitted,

                                        SAIMA S. MOHSIN
                                        Acting United States Attorney

                                        *s/ Robert A. Moran*
                                        Robert A. Moran
                                        Ronald W. Waterstreet
                                        Assistant U.S. Attorneys
                                        211 W. Fort Street, Suite 2001
                                        Detroit, MI 48226
                                        (313) 226-9553
                                        robert.moran@usdoj.gov
                                        P46346

Dated: February 25, 2021

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 25, 2021, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

*s/ Robert A. Moran*
Robert A. Moran
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9553
robert.moran@usdoj.gov